Argued March 5, affirmed April 5, 1961

# IRA *v.* COLUMBIA FOOD COMPANY ET AL

360 P. 2d 622

*Robert H. Hollister,* Portland, argued the cause for appellants. On the briefs were Hollister & Thomas, Portland.

*James J. Kennedy,* Portland, argued the cause for respondent. With him on the brief were Ryan & Ryan, Portland.

Before McALLISTER, Chief Justice, and ROSSMAN, PERRY, GOODWIN and LUSK, Justices.

GOODWIN, J.

This is an appeal from a judgment for the plaintiff in the sum of $5,000 general damages, $5,000 punitive damages, and $150 special damages for ma-

licious prosecution. The plaintiff previously had brought an action against the same defendants for false imprisonment. That action was tried to an earlier circuit court jury and resulted in a verdict and judgment for the defendants.

The same defendants named and exonerated in the false imprisonment case now contend that they were entitled either to a judgment of nonsuit or a directed verdict in the action for malicious prosecution. They base their contention on the proposition that because a jury once found them free from fault in the false imprisonment case the matter of probable cause is *res judicata* in the malicious prosecution case.

The plaintiff's first complaint sought damages for injuries arising out of the plaintiff's arrest on December 3, 1956. The second sought damages for a prosecution commenced in the municipal court on December 4, 1956.

The corporate defendant operates a chain of food markets. The individual defendants are its general manager and a store detective. The detective, acting under the direction of the general manager, personally arrested the plaintiff in the parking lot of a Portland market. The next day the detective visited the city attorney's office. Against the advice of a deputy city attorney, the detective demanded that prosecution be instituted under a city ordinance which denounces shoplifting. The deputy city attorney was reluctant to prosecute. In his opinion the facts disclosed by the detective would not produce a conviction. The plaintiff, a family man of good reputation, said he forgot to pay for an item of merchandise of the value of 33 cents. The deputy city attorney telephoned the defendant general manager. The attorney

then expressed his serious doubt that a jury would convict the plaintiff. Both individual defendants, however, insisted upon the prosecution, which in due course was had. The prosecution ended in the acquittal of the plaintiff.

A trial jury having found for the plaintiff in the case at bar, with adequate evidence to support the verdict, it is established for the purposes of this case that the defendants prosecuted the plaintiff in the municipal court without probable cause at that time to believe him guilty of the crime of shoplifting.

The question for decision is whether a general verdict for the defendants in the earlier trial which litigated the existence of probable cause to place the plaintiff under arrest bars the plaintiff in this case.

The present problem arises because no warrant was sought from any law enforcement agency prior to the plaintiff's initial arrest on December 3, 1956. He was the object of a form of direct action by the aggrieved shopkeeper sometimes characterized as a "citizen's arrest". The events of that day constituted a classical common-law trespass, unless justified. See Restatement, 1 Torts 66, § 35. The plaintiff correctly contends that his arrest was one wrong and the defendants' recourse the next day to the processes of law for a prosecution was another. *Allen v. Burns I. D. Agency, Inc.,* 121 Or 492, 256 P 197. In *Allen v. Burns,* the two separate causes of action were joined in one complaint and were tried together. That procedure was available to the plaintiff in the case at bar, but he chose to submit his causes to two juries.

In *Guest v. Warren,* 9 Exch 379, 156 Eng Rep 161, the defendant, like the defendants in *Allen v. Burns I. D. Agency, Inc.,* supra, and in the case at bar, personally arrested the plaintiff and thereafter instigated

an unsuccessful prosecution. In *Guest v. Warren*, as here, the plaintiff filed two actions. Unlike in the case at bar, the English plaintiff prevailed in his first action, recovering damages for the false imprisonment. Thereafter, in the action for damages for malicious prosecution, the defendant contended that the plaintiff had fully recovered for all injuries suffered at his hands. The defense was rejected. The court held that the plaintiff was not splitting a cause of action, but had suffered two separate wrongs, each of which entitled him to redress.

The English court pointed out in a footnote that the proper conduct of the separate trials would require rather strict limitations upon the admission of evidence in each so that the jury would not be given an opportunity to commingle damages for two injuries in an action upon either one. This admonition should be borne in mind by those plaintiffs whose causes of action arise within the limited range of factual situations which permit the bringing of two actions.

In *Kuhnhausen v. Stadelman*, 174 Or 290, 148 P2d 239, 149 P2d 168, Mr. Justice LUSK, writing for this court, set forth the substantive distinctions between the two common-law torts of false imprisonment and malicious prosecution. These distinctions now become important because a question has been presented with reference to what is, or may be, *res judicata* when the two causes of action are tried separately.

■ The term *res judicata* is frequently used in a broad sense as including merger, bar, collateral estoppel and direct estoppel. The only question presented here is whether collateral estoppel applies. The terms are defined in Restatement, Judgments 174, § 45. We quote:

"Comment  *  *  *

"c. *Collateral estoppel.* A judgment, whether in favor of the plaintiff or of the defendant, may have a further effect. In a subsequent action between the parties on a different claim, the judgment is conclusive as to issues raised in the subsequent action if those issues were actually litigated and determined in the prior action * * *."

For examples of issues actually litigated and determined within the rule stated above, see illustrations and comments under Restatement, Judgments 293-314, § 68 (See Restatement, 1948 Supp 336.). The test in each case is whether a given issue was necessary to the determination made in the former trial. See cases cited in *The Evergreens v. Nunan,* 141 F2d 927, 928-929 (2d Cir), 152 ALR 1187, cert. den. 323 US 720, 65 S Ct 49, 89 L ed 579; Note, 36 NYU L Rev 522.

The defendants contend that the issue of probable cause litigated in the first trial is the same issue submitted to the jury in the second trial. But, in doing so, the defendants ignore the events of December 4, 1956.

The only issue litigated in the first trial was whether the defendants, who had the burden of proof, had probable cause to make an arrest under all the circumstances existing on December 3, 1956. The jury found that fact in the defendants' favor. However, the prosecution in municipal court was instigated the next day, when the defendants had additional facts upon which to make their decision.

██ A storekeeper, upon seeing what appears to be the commission of a crime, may reasonably pursue the supposed thief and place him under arrest. Upon a given state of facts a jury could find, as a jury did between these parties, that the storekeeper had probable cause to make the arrest. Upon additional facts coming to the knowledge of the defendants after the

arrest, probable cause to prosecute could evaporate entirely. Prosecution instigated thereafter thus could be found by the jury, and in the case at bar was so found, to have been without probable cause. Restatement, 3 Torts 391, § 655, Comment c.

We hold that the issues of probable cause were not the same in both cases, and that collateral estoppel was not available as a defense. There was no error in overruling the motion for a judgment of nonsuit, as the issue of probable cause to proceed with the prosecution had never been decided by any court and remained in the case as a question for the jury. It follows that there was likewise no error in overruling the motion for a directed verdict.

This holding is limited to the factual situation where the defendant imprisons the plaintiff without a warrant and thereafter initiates an unjustified prosecution. What is said herein with reference to collateral estoppel on the issue of probable cause would not necessarily apply to the more common fact situation where the arrest is made by peace officers acting under color of legal process instigated by the defendants.

One other assignment of error (No. 13), not disposed of by our holding above, is predicated upon the refusal of the trial court to give an instruction requested by the defendants to the effect that the plaintiff had the burden of segregating his damages between the two wrongs and that if the plaintiff failed so to do the verdict must be for the defendants. No authority is cited in support of this instruction, and we have found none.

In the trial of the instant case, a substantial amount of evidence relevant only to the issues tried in the earlier trial came into the record. Some came

in without objection, either as background for later evidence which was relevant, or because nobody bothered to object to it. In any event, the presence of irrelevant evidence in the record does not necessarily mean that the jury must find for the defendant as a matter of law.

We believe that the requested instruction was a belated attempt to do what should have been done by the defendants early in the trial, i.e., to point out by timely objection that evidence of the plaintiff's discomfiture upon being taken to the police station on December 3 was not relevant to the question of damages arising out of the subsequent prosecution. When an objection was later addressed to the trial judge, he correctly excluded such evidence and told the jury to disregard that which had been admitted earlier without objection.

■■ The trial judge correctly instructed the jury that it could allow no damages in this case for mental or physical suffering prior to the issuance of the complaint by the city attorney's office. On the record made during the trial, this instruction was all the defendants were entitled to. There was adequate evidence to support a verdict for damages arising solely from the prosecution, as distinguished from the damages arising from the arrest.

■■ The defendants took no exception to any instruction given. There is thus no reviewable question before the court on any instruction that was given to the jury. ORS 17.510. The defendants did take an unnecessary exception to the refusal of the court to give each of their requested instructions. Exceptions to the refusal to give requested instructions are automatic under ORS 17.510. To obtain appellate review of the failure to give a particular requested instruc-

tion, error must be assigned in the brief and the requested instruction must be set out as provided in Rule 19. While the defendants have followed the correct procedure in their brief, we have seen that the instruction was properly refused.

■■ Other assignments of error present no substantial question of law. One assignment suggests that the jury may have been influenced by passion and prejudice in allowing punitive damages. Such damages in themselves import no inference of prejudice. *Gumm v. Heider*, 220 Or 5, 34, 348 P2d 455. There was ample evidence to support the verdict. The inference of malice from want of probable cause is one for the jury to draw. *Stewart v. Sonneborn*, 98 US 187, 25 L ed 116.

To explore in detail the defendants' allegation that the trial judge permitted prejudice to enter the case would unduly prolong this opinion. The defendants were given a fair trial. Of the remaining assignments of error, none discloses a basis for reversal.

Affirmed.